UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH HARDIN,

        Plaintiff,                                   Hon. Richard Alan Enslen

v.                                               Case No. 1:06 CV 430

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on <u>Defendants' Motion to Dismiss Under Rule 12(b)(6)</u>. (Dkt. #30). Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions for summary judgment, the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action **dismissed**.

**BACKGROUND**

        On March 30, 2004, Defendant Caruso, in her capacity as Director of the Michigan Department of Corrections, issued a memorandum stating that

> Over the past several months, there has been increased activity by prisoners engaging in various schemes involving the Uniform Commercial Code (UCC). This activity is not unique to this Department or to prisoners. These schemes include "copyrighting" names and making demands for money whenever the name is used by another, preparing fraudulent drafts or bills of exchange, and filing fraudulent

> liens in order to harass staff, prosecutors, judges, and others. Such activity by prisoners within the Department is clearly harassment and, in many cases, a felony.

(Dkt. #1, Exhibit B).

Accordingly, Defendant Caruso directed that "[e]ffective immediately, prisoners are no longer authorized to have any books, pamphlets, forms or other material regarding actions that can be taken under the UCC; these materials shall be considered contraband since they can be used to facilitate criminal activity and pose a risk to the custody and security of the facility." Defendant Caruso, however, made clear that prisoners would still be entitled to possess "publications in the law library, such as Michigan Compiled Laws Annotated, that set forth the statute or provide a scholarly legal analysis of the UCC." *Id.* In a January 1, 2005 memorandum, Defendant Caruso reiterated that prisoners were not permitted to possess the UCC-related materials identified in her earlier memorandum. (Dkt. #31, Exhibit B).

In May 2005, an "Ambassador of the Washitaw Nation of Moors" mailed to Plaintiff materials which he describes as "various religious and nationality documents of a legal nature." (Dkt. #1 at ¶ 22). On May 26, 2005, Defendant Lotz completed a Notice of Package/Letter Rejection stating that Plaintiff was not permitted to possess this material because it consisted of improper UCC-related information. *Id.* at Exhibit 1. Plaintiff objected that this determination was in error because "the documents had to be filed with the U.S. Department of the Interior, U.S. Justice Department, Homeland Security, and the United Nations to meet a specific deadline." *Id.* at ¶¶ 23-25. Plaintiff further asserted that the material in question was "a part of plaintiff's religious and nationality rights, as a member of this Nation of Moors." *Id.*

On June 3, 2005, Defendant Schoenfeld conducted a hearing regarding Plaintiff's objection. *Id.* at Exhibit 1. Plaintiff acknowledged that the material in question was UCC-related. Defendant Schoenfeld denied Plaintiff's objection on the ground that the material in question could be used "to place liens against staff and members of the criminal justice system" pursuant to a "scam. . . known as the redemption theory." Defendant Schoenfeld further stated that the materials in question "are used to facilitate criminal activity and pose a risk to the custody and security of this facility." *Id.*

On June 20, 2006, Plaintiff initiated the present action in which he has asserted claims against five individuals, as well as the Michigan Department of Corrections. Specifically, Plaintiff alleges that Defendants Caruso, Beckwith, and Lotz violated his First Amendment right to freely practice his religion. *Id.* at ¶¶ 53-54, 59-61, 68-70. Plaintiff alleges that Defendants Howes and Schoenfeld violated his First Amendment right to freely practice his religion as well as his substantive due process rights. *Id.* at ¶¶ 55-58, 62-67. Plaintiff also asserts that Defendants violated his rights under 42 U.S.C. §§ 1981, 1985, 1986, 2000bb, and 2000cc-1, as well as his state law right to the equal protection of the law. *Id.* at ¶¶ 10, 87-101. Plaintiff seeks declaratory, injunctive, and monetary relief. Asserting that Plaintiff has failed to state a claim upon which relief may be granted, Defendants now move for dismissal of Plaintiff's complaint.

I.      **Plaintiff's Claims Against the Michigan Department of Corrections**

Plaintiff has sued the Michigan Department of Corrections (MDOC). The MDOC is not a person under 42 U.S.C. § 1983 and, furthermore, enjoys immunity from suit under the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Walker v. Michigan*

*Dep't of Corrections*, 128 Fed. Appx. 441, 444 (6th Cir., April 1, 2005). Accordingly, the Court recommends that Plaintiff's claims against the MDOC be dismissed.

**II.        Plaintiff's Substantive Due Process Claims**

Plaintiff asserts that Defendants Howes and Schoenfeld violated his First Amendment right to freely practice his religion as well as his Fourteenth Amendment substantive due process rights. However, because Plaintiff's free exercise rights are sufficiently protected by the First Amendment, the Court recommends that his substantive due process claims be dismissed.

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action.

In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law. Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause. *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)). The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process. *Id.* at 271-72.

The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment. The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73. The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief." *Id.* at 274-75.

Here, Plaintiff alleges that his due process rights were violated because Defendants violated his First Amendment right to freely exercise his religion. This right is obviously protected, adequately so, by the First Amendment. Therefore, as in *Albright*, substantive due process can provide Plaintiff no relief. Accordingly, the Court recommends that Plaintiff's substantive due process claims against Defendants Howes and Schoenfeld be dismissed.

**III.**     **Plaintiff's Claims Against Defendants Beckwith and Howes**

Defendants Beckwith and Howes assert that they are entitled to the dismissal of Plaintiff's claims. The only allegations in Plaintiff's complaint against Defendants Beckwith and Howes are that they denied Plaintiff's grievances. (Dkt. #1 at ¶¶ 31-34, 44).

Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *Salehpour v.*

*University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").

The Court, therefore, recommends that Plaintiff's claims against Defendants Beckwith and Howes be dismissed. Defendant Schoenfeld asserted that he was likewise entitled to dismissal of Plaintiff's claims on this basis. However, as discussed above, Plaintiff alleges that Defendant Schoenfeld denied his request to possess the UCC-related material in question. Such constitutes sufficient personal involvement by Defendant Schoenfeld to preclude dismissal on this basis.

**IV.        Plaintiff's First Amendment Claims**

Defendants Schoenfeld, Caruso, and Lotz assert that they are entitled to the dismissal of Plaintiff's First Amendment Free Exercise claims on the grounds that such assertions fail to state a claim on which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). However, because Defendants have submitted matters outside the pleadings in support of their request for relief, their motion is properly characterized as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(c).

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996).  The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989).

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

Plaintiff claims that Defendants violated his First Amendment right to freely practice his religion by refusing to permit him to possess the UCC-related material sent to him by an "Ambassador of the Washitaw Nation of Moors." Plaintiff asserts, without explanation or clarification, that such materials are necessary to the exercise and practice of his religion. Defendants assert that the policy pursuant to which Plaintiff was denied the materials in question was a legitimate means by which to prevent fraudulent and illegal behavior by inmates.

It is well accepted that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

Accordingly, when reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner*

Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policies at issue are reasonably related to a legitimate penological interest. *Id.* Even

if the Court assumes that deprivation of the materials in question constitutes a violation of Plaintiff's right to freely practice his religion, Defendants are nonetheless entitled to the dismissal of Plaintiff's claims.

The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. *See*, *e.g.*, *United States v. Gordon*, 2005 WL 2237640 (S.D. Ga., Aug. 25, 2005) (prisoners filed "facially absurd" liens and UCC financing statements designed to harass and intimidate government officials in the performance of their duties); *United States v. Orrego*, 2004 WL 1447954 (E.D.N.Y., June 22, 2004) (prisoner purported to copyright his name, after which he filed fraudulent liens against various government officials for using his name without permission or payment); *Ray v. Williams*, 2005 WL 697041 (D. Or., Mar. 24, 2005) (prisoner engaged in fraudulent scheme by which he filed false UCC filings against government officials seeking payment for unauthorized use of his copyrighted name); *United States v. Martin*, 356 F.Supp.2d 621 (W.D. Va. 2005) (prisoner filed fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt owed him by various government officials); *United States v. Brum*, 2005 WL 1606584 (E.D. Tex., July 1, 2005) (prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); *Cooperwood v. McDonald*, 2005 WL 1427718 (W.D. Mich., June 13, 2005) (prisoner filed a fraudulent lien "for infringement of his copyrighted name"); *United States v. Stouder*, 2005 WL 2715666 (M.D. Tenn., Sept. 2, 2005) (prisoner filed fraudulent UCC financing statements against government officials in the amount of $300,000,000.00).

That prisoners use the UCC and UCC-related materials to perpetrate fraud and harassment against government and prison officials is well established. That the Michigan Department of Corrections has a legitimate penological purpose in preventing such behavior cannot seriously be questioned. The challenged policy represented a rational means by which to achieve the legitimate goal of preventing prisoners from engaging in such fraudulent and illegal behavior. While the policy prevented prisoners from possessing "books, pamphlets, forms or other material regarding actions that can be taken under the UCC," prisoners were still permitted to possess "publications in the law library, such as Michigan Compiled Laws Annotated, that set forth the statute or provide a scholarly legal analysis of the UCC." The Court concludes, therefore, that there exists a "valid, rational connection" between the policies at issue and a legitimate governmental interest.

As for the remaining *Turner* factors, such do not weigh in Plaintiff's favor. While Plaintiff asserts that there exist alternative means of preventing fraudulent activity by inmates, the Constitution does not require that prison officials accommodate inmates' rights in the manner most convenient to inmates. *See, e.g., Jones*, 697 F.2d at 803. Rather, the Constitution instructs that prison officials may not infringe upon inmates' constitutional rights, unless necessitated by a legitimate penological purpose. To the extent that the policy at issue constituted an infringement of Plaintiff's constitutional rights, Defendants have established that such was necessitated by a legitimate penological purpose. Moreover, the resources of the MDOC are limited and the Court must accord "wide-ranging deference" to the solutions implemented by prison officials to combat the very serious problem of UCC-related fraud perpetrated by prisoners. The Court concludes, therefore, that the challenged policy was reasonably related to legitimate penological interests and satisfies the relevant legal standard. With respect to these particular claims, therefore, Plaintiff has suffered no compensable infringement of his

constitutional rights. The Court recommends, therefore, that Defendants Schoenfeld, Caruso, and Lotz are entitled to summary judgment as to Plaintiff's Free Exercise claims.

V.        **Plaintiff's RFRA and RLUIPA Claims**

Plaintiff asserts that Defendants violated his rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.*, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). Plaintiff has failed to establish that the denial of UCC-related material has substantially burdened his ability to exercise his religion. As for Plaintiff's RFRA claims, the Court notes that RFRA has been held unconstitutional "as applied to States and their subdivisions." *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005) (citing *City of Boerne v. Flores*, 521 U.S. 507-532-36 (1997)). Accordingly, the Court recommends that these claims be dismissed.

VI.       **Plaintiff's Equal Protection Claims**

Plaintiff asserts that Defendants have violated his rights under 42 U.S.C. § 1981 which prohibits racial discrimination. While Plaintiff makes the bare assertion that he has been denied the equal protection of the law, he has failed to allege facts sufficient to support a finding that such is the case. Accordingly, the Court recommends that these claims be dismissed.

**VII.**     **Plaintiff's Conspiracy Claims**

Plaintiff asserts that Defendants conspired to violate his rights in violation of 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986. To establish a claim of private conspiracy under section 1985, Plaintiff must establish the following elements: (1) a conspiracy involving two or persons, (2) for the purpose of depriving directly or indirectly, a person or class of persons of equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) which causes injury to a person or property, or a deprivation of a right or privilege. *See Sawyer v. Lexington-Fayette Urban County Government*, 2001 WL 1006237 at *2 (6th Cir., Aug. 21, 2001) (citing *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)). As detailed above, Plaintiff has failed to establish that he suffered a violation of his First Amendment rights. Thus, even assuming that Plaintiff could establish the first three elements of his conspiracy claim, he cannot establish that the conspiracy deprived him of a right or privilege.

Section 1986 imposes liability on any individual who possesses knowledge that "any of the wrongs" proscribed in section 1985 are "about to be committed," yet fails to take action to prevent their commission. 42 U.S.C.§ 1986. However, in the absence of a violation of section 1985, "there can be no violation of section 1986." *Seguin v. Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992). The Court recommends, therefore, that Plaintiff's conspiracy claims be dismissed.

**VIII.**     **Plaintiff's State Law Claims**

Plaintiff asserts that "each of the individual Defendants" have violated article I section 2 of the Michigan Constitution, which guarantees that no person shall be denied equal protection of the law. (Dkt. #1 at ¶¶ 99-100). Plaintiff has asserted the present action pursuant to 42 U.S.C. § 1983, which provides a cause of action for the deprivation of any right, privilege, or immunity secured by

federal law or the United States Constitution. Section 1983 does not authorize a cause of action based on an alleged violation of state law.

Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction." Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well." *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Wojnicz v. Davis*, 2003 WL 21774162 at *3 (6th Cir., July 29, 2003) (same). Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims and instead dismiss such claims, thereby permitting Plaintiff to pursue such claims in state court if he so desires.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendants' Motion to Dismiss Under Rule 12(b)(6)</u>, (dkt. #30), be **granted** and Plaintiff's action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 28, 2007                    /s/ Ellen S. Carmody
                                         ELLEN S. CARMODY
                                         United States Magistrate Judge